IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| United States of America | Case No. 4:09-cr-00340-TLW |
|---|---|
| v. | **ORDER** |
| Anthony Gene Trappier | |

This matter comes before the Court on Defendant Anthony Gene Trappier's *pro se* motions for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF Nos. 254 & 278. For the reasons below, his motions are **DENIED**.

## PROCEDURAL BACKGROUND

On March 24, 2009, Trappier was indicted on six drug and firearm counts arising out of his trafficking and distribution of illegal narcotics. ECF No. 1. Those counts were:

> Count 1: conspiracy to possess with intent to distribute and distribution of 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B); all in violation of 21 U.S.C. § 846.

> Count 2: possession with intent to distribute ("PWID") a quantity of heroin, a schedule I controlled substance, and a quantity of cocaine, a schedule II controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(c).

> Count 3: PWID heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

> Count 4: PWID heroin in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C).

> Count 5: possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

> Count 6: felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 924(e).

ECF No. 1. Following Trappier's indictment, the Government filed an Information pursuant to 21 U.S.C. § 851 enhancing his statutory range to a mandatory minimum of 10 years and a maximum of life imprisonment based on his prior drug convictions. ECF No. 80.

On March 24, 2010, Trappier pled guilty to Count 1 and Count 5. ECF Nos. 88, 85 & 89. In exchange for his plea, the Government agreed to drop Counts 2, 3, 4, and 6. ECF No. 85. On August 26, 2010, this Court sentenced Trappier to 262 months' imprisonment as to Count 1 and 60 months as to Count 5, to run consecutively, for a total of 322 months' imprisonment. ECF Nos. 98 & 103.

Trappier appealed, and the Fourth Circuit affirmed this Court's judgment. ECF Nos. 100 & 137. Subsequently, Trappier filed numerous post-conviction motions, which have either been denied or dismissed by this Court. ECF Nos. 140, 162, 167, 188, 189, 191, 205, 208, 209, 223, 226, 227, 228, 232, 240 & 248. On appeal, the Fourth Circuit has either affirmed this Court's decisions or dismissed Trappier's appeals. ECF Nos. 177, 207, 221, 224, 242, 245 & 253.

On September 22, 2020, Trappier filed a motion for compassionate release, which the Government opposed. ECF Nos. 254 & 266. Trappier then filed a second motion for compassionate release, which the Government again opposed. ECF Nos. 278 & 296. The Court will consider these motions together.

Accordingly, this matter is ripe for review, adjudication, and disposition.

## APPLICABLE LAW

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and compelling reasons warranting a sentence reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to both Trappier's motion and the Court's decision, the Court will first review the offense conduct establishing Trappier's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

### I.    THE OFFENSE CONDUCT

At the time of his arrest, Trappier was known for selling heroin, crack cocaine, and marijuana in and around Myrtle Beach, South Carolina. *See* Presentence Investigation Report ("PSR") ¶ 33. On October 8, 2008, agents of the 15th Circuit Drug Enforcement Unit ("DEU") arrested one of Trappier's associates, Dennis Sumter, for the distribution of heroin at his apartment in Surfside Beach, South Carolina. *Id.* ¶ 12. Sumter waived his *Miranda* rights and told DEU agents that he had obtained his heroin from Trappier. *Id.* ¶ 13. He also informed agents that he had been distributing heroin on Trappier's behalf for around six months. *Id.*

¶ 13. At the direction of DEU agents, Sumter placed several monitored calls to Trappier requesting additional heroin. *Id.* In response, Trappier informed Sumter that he was on his way to Sumter's apartment with more heroin. *Id.*

When Trappier entered the apartment, he pulled five bundles of heroin (50 wax paper packages) from his pocket and attempted to hand them to Sumter.[1] *Id.* ¶ 16. Sumter shook his head "no," used hand gestures to let Trappier know that law enforcement agents were in the apartment, and pointed to the bedroom door while saying "police" very quietly. *Id.* Trappier then loudly announced, "I'm going to get the stuff from out of my car" and attempted to exit through the front door. *Id.* ¶ 15. As he exited the front door, DEU agents ordered Trappier to the ground, and he was arrested. *Id.* Agents found that Trappier was in possession of five bundles of heroin (5 grams) and 252 grams of cocaine. *Id.* ¶ 14.

For this conduct, Trappier was charged with trafficking in heroin and trafficking in cocaine. *Id.* ¶ 17. Following his arrest, DEU agents interviewed Trappier at his dentition center. *Id.* Trappier waived his *Miranda* rights and agreed to speak to law enforcement. *Id.* During the following interview, he admitted to purchasing approximately five kilograms of cocaine from a drug dealer in Rock Hill, South Carolina. *Id.* He also stated that he, and his associates at his instruction, had purchased ounce quantities of heroin from New York for distribution in South Carolina. *Id.* ¶ 19. He admitted to DEU agents that he had distributed 195 "bricks"

---

[1] A package of heroin is the equivalent of 0.1 grams of heroin.

of heroin (975 grams) to two individuals in the preceding eight months.[2] *Id.*

Trappier further advised agents that he stored drug related money in a cigar box at the residence he shared with his common-law wife. *Id.* ¶ 20. After executing a search of the residence, Officers recovered $13,500.00 from this location. *Id.* ¶ 21. Trappier also stated that he stored heroin at a second location, his girlfriend's apartment. *Id.* ¶ 23. Officers searched the apartment and discovered 240 wax paper packages of heroin (24 grams), which resulted in Trappier being charged with an additional count of trafficking heroin. *Id.* ¶ 23.

Trappier was released on bond on October 11, 2008, yet his criminal activity did not end, and he resumed narcotics trafficking. *Id.* Five days after Trappier was released on bond, DEU agents received information from a confidential informant ("CI") that Trappier was at one of his apartments packaging heroin. *Id.* ¶ 24. The CI further stated that he knew Trappier to have several guns stored inside the apartment. *Id.*

As DEU agents approached Trappier's apartment, they saw him leaving in a white utility van. *Id.* ¶ 25. The agents followed him for a short time, initiated a traffic stop, and conducted a search incident to arrest, wherein they discovered $1,700.00 in Trappier's pocket. *Id.* After being advised of his *Miranda* rights, which he waived, Trappier informed the agents that there was heroin inside his van and that the $1,700.00 was a down payment on that heroin. *Id.* ¶ 26. After conducting a brief search, agents discovered 90 wax paper packages of heroin (9 grams) in the

---

[2] A "brick" of heroin is the equivalent of 5 grams of heroin.

van. *Id.*

After his arrest, Trappier gave agents consent to search his apartment. *Id.* ¶ 27. Before entering the apartment, he told agents there was additional heroin inside his van. *Id.* A further search of the van revealed an additional 250 packages of heroin (25 grams). *Id.* Once inside the apartment, Trappier took the agents to the unit's dryer and pulled out a blue bag. *Id.* Inside the bag were six firearms and ammunition and 13 grams of heroin. *Id.* ¶ 28. As a convicted felon, Trappier was barred from possessing these firearms and ammunition. Further search of the apartment reveled other items commonly used in narcotics trafficking and distribution: plastic bags, boxes of rubber bands, digital scales, mixers, and a large plastic bag containing the "cut" Trappier used for his cocaine. *Id.* ¶ 29.

Following Trappier's second arrest on narcotics charges, the DEU interviewed several cooperating sources. All of whom confirmed Trappier's extensive drug trafficking activity. *Id.* ¶¶ 33–36. Based on the drugs seized by law enforcement and the statements of both cooperating sources and Trappier himself, Trappier was held accountable for distributing 5,252 grams (5.2 kilograms) of cocaine, 170.1 grams of crack cocaine, 1,052 grams (1 kilogram) of heroin, and 567 grams of marijuana. *Id.* ¶ 37. His converted drug weight was the equivalent of 5,504.97 kilograms of marijuana. *Id.*

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Trappier's motion for compassionate release, the Court will first review the arguments raised by both Trappier and the

Government.

### A.    *Trappier's Arguments in Support of His Motion*

In his combined motions for compassionate release, Trappier asserts three grounds for establishing "extraordinary and compelling reasons" pursuant to § 3582(c)(1). First, he asserts that he was subject to a higher statutory sentencing range for violations of 21. U.S.C. §§ 846, 841(a)(1), and 841(b)(1) due to the improper enhancement of his sentence pursuant to 21 U.S.C. § 851. ECF No. 254 at 6–10. Second, he argues that, if sentenced today, his conviction for violation of 18 U.S.C. § 924(c) would be invalid and his sentence would be lower. ECF No. 6–13. Third, he contends that, if sentenced today, he would no longer be a career offender and that his sentence should be reduced to take into account the disparity between the sentence he received and the one he would receive if sentenced today. *Id.* at 7–10.

### B.    *The Government's Opposition*

The Government opposes Trappier's motions on two independent grounds. ECF No. 78. First, the Government asserts that Trappier cannot establish "extraordinary and compelling reasons" because (1) his sentence was properly enhanced pursuant to § 851, (2) his § 924(c) conviction would remain valid if he were sentenced today, and (3) he would still be a career offender based on his plea to the § 924 (c) count. ECF Nos. 266 & 296. Second, the Government asserts that, even if Trappier can establish "extraordinary and compelling reasons" for relief,

that his motions should still be denied based on an analysis of the § 3553(a) factors. ECF Nos. 266 & 296.

## III.   THE COURT'S REVIEW

The Court will first analyze whether Trappier has presented "extraordinary and compelling reasons" warranting a reduction in his sentence before moving on to whether the § 3553(a) factors weigh in favor of his release.[3]

### A.   *The "Extraordinary and Compelling Reasons" Standard.*

As discussed above, Trappier asserts three grounds for establishing "extraordinary and compelling reasons." The Court will analyze each of his arguments in turn.

#### i.   *Trappier's sentence was properly enhanced pursuant to § 851.*

Count 1 of the Indictment charged Trappier with conspiracy to possess with intent to distribute and distribution of 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), 846 and 851. ECF No. 1. Under § 841(b)(1)(B), a defendant in convicted of distributing 100 grams or more of heroin faces a statutory mandatory minimum sentence of 5 years and maximum sentence of 40 years. However, if a defendant "commits such a violation after a prior conviction for a serious drug felony . . . has become final, such person shall be sentenced to a term of imprisonment which may not be less than 10 years and not more than life imprisonment [.] 21 U.S.C. § 841(b)(1)(B)(viii).

Prior to Trappier's sentencing, the Government filed an Information

---

[3] The Government does not contest that Trappier has exhausted his administrative remedies. Accordingly, the Court will address Trappier's motions on their merits.

pursuant to 21 U.S.C. § 851 based on Trappier's prior drug convictions. ECF No. 80. This § 851 notice served to enhance Trappier's statutory sentencing range to a mandatory minimum of 10 years and a maximum of life imprisonment pursuant to § 846(b)(1)(B)(viii). *Id.* The Government's notice cited the following three prior drug convictions, each of which could be used to enhance Trappier's sentence pursuant to 21 U.S.C. § 841(b)(1)(B)(viii):

| CONVICTION NO. 1 | |
|---|---|
| DATE OF CONVICTION: | 01/23/1996 |
| CASE NUMBER: | 95GS22628 |
| CHARGE: | (1) PWID Cocaine and (2) PWID Cocaine Near a School |
| JURISDICTION: | Georgetown County, South Carolina |
| SENTENCE: | 5 years / 3 years, concurrent with other charges |

| CONVICTION NO. 2 | |
|---|---|
| DATE OF CONVICTION: | 01/23/1996 |
| CASE NUMBER: | 94GS22196 |
| CHARGE: | Possession of Crack Cocaine |
| JURISDICTION: | Georgetown County, South Carolina |
| SENTENCE: | 1 year or $2,000.00 fine |

| CONVICTION NO. 3 | |
|---|---|
| DATE OF CONVICTION: | 04/03/1995 |
| CASE NUMBER: | N12615-94 |

| CHARGE: | Criminal Possession of Controlled Substance 3rd Degree |
|---|---|
| JURISDICTION: | Queens County, New York |
| SENTENCE: | 1 year to 3 years, license suspended 6 months |

*Id.* at 1.

Trappier asserts that the Government's § 851 notice was impermissibly used to improperly enhance his sentence and that, if sentenced today, he would not be subjected to an enhanced sentence based on his prior criminal convictions. ECF No. 254 at 6. Specifically, he argues that his prior convictions no longer qualify as "serious drug felon[ies]" under the new definition of "serious drug felony." *Id.* That definition states that a "serious drug felony" is a drug offense described in § 924(e)(2) "for which—(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57).

Regarding his first convictions for PWID Cocaine and PWID Cocaine Near a School, Trappier asserts it is ineligible as an enhancing § 851 predicate because it "does not exist in Petitioner's Guilty Plea Transcripts." *Id.* at 7. Next, Trappier asserts that his second and third convictions for possession of crack cocaine and criminal possession of a controlled substance, 3rd degree, are, respectively, "ineligible, because Petitioner was only sentenced to one (1)-year imprisonment for case # 94GS22196/Possession of Crack Cocaine, in Georgetown County, S.C. on 1/23/1996, and case #NY12615-94/Criminal Possession of Controlled Substance 3rd Degree, in Queens County, N.Y. On 4/3/1995." *Id.* at 6–7.

The Court is not persuaded by Trappier's argument because one of his prior convictions would still qualify as a § 851 predicate even if he were sentenced today. *See United States v. O'neil*, 542 F. App'x 225 (4th Cir. 2013) (holding that a conviction under S.C. Code Ann. § 44-53-370 for possession with intent to distribute cocaine constituted a predicate felony drug offense for purposes of 21 U.S.C. § 841(b)). This is because one of his convictions remains a "serious drug felony" under the revised definition. Specifically, contrary to Trappier's arguments, his 1996 conviction for PWID Cocaine would still qualify as an enhancing predicate. This is because (1) it is for an offense described in § 924(e)(2), (2) Trappier served a term of imprisonment of more than 12 months (approximately 27 months),[4] and (3) was released within 15 years of the instant offense (released approximately 10 years, 10 months before the conclusion of the instant conspiracy). Thus, if sentenced today, it would still qualify as an enhancing predicate even under the new definition of a "serious drug felony" as defined in 21 U.S.C. § 802(57).

Accordingly, the Court finds that, even if Trappier were resentenced today, his sentence would still be properly subject to § 851 enhancement. Therefore, he cannot establish "extraordinary and compelling reasons" on this basis.

    *ii.*    <u>*Trappier's § 924(c) conviction would remain valid if sentenced today.*</u>

Trappier's next argument asserts that, if sentenced today, his § 924(c) conviction would be invalid because his § 846 conspiracy conviction on Count 1 is not a valid predicate conviction for purposes of charging a § 924(c) violation "because the [ ] conspiracy offense, does not qualify for the term 'drug trafficking

---

[4] Trappier was sentenced on January 23, 1996, and released on May 7, 1998. PSR ¶ 47.

crimes[.]'" ECF No. 278 at 10. As noted by the Government, Trappier's argument is

based on the claim that certain language found in 21 U.S.C. § 801 controls the

definition of what constitutes a "drug trafficking crime" under 18 U.S.C. § 924(c)(2),

which sets forth the felonies identified as "drug trafficking crimes." *Id.* at 8–10.

Section § 801 is the legislative preamble to the Controlled Substances Act and

"Congressional findings and declarations" regarding "controlled substances." 21

U.S.C. § 801.[5] Trappier posits that the brief Congressional findings of fact

articulated in § 801 constitute "elements" and that his § 846 conspiracy conviction

---

[5] Section 801 states, in full:

The Congress makes the following findings and declarations:

(1) Many of the drugs included within this subchapter have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people.

(2) The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.

(3) A major portion of the traffic in controlled substances flows through interstate and foreign commerce. Incidents of the traffic which are not an integral part of the interstate or foreign flow, such as manufacture, local distribution, and possession, nonetheless have a substantial and direct effect upon interstate commerce because--

(A) after manufacture, many controlled substances are transported in interstate commerce,

(B) controlled substances distributed locally usually have been transported in interstate commerce immediately before their distribution, and

(C) controlled substances possessed commonly flow through interstate commerce immediately prior to such possession.

(4) Local distribution and possession of controlled substances contribute to swelling the interstate traffic in such substances.

(5) Controlled substances manufactured and distributed intrastate cannot be differentiated from controlled substances manufactured and distributed interstate. Thus, it is not feasible to distinguish, in terms of controls, between controlled substances manufactured and distributed interstate and controlled substances manufactured and distributed intrastate.

(6) Federal control of the intrastate incidents of the traffic in controlled substances is essential to the effective control of the interstate incidents of such traffic.

(7) The United States is a party to the Single Convention on Narcotic Drugs, 1961, and other international conventions designed to establish effective control over international and domestic traffic in controlled substances.

"does not match the elements of a 'drug trafficking crime' at § 924(c)(2), pursuant to 21 U.S.C. § 801 of the Controlled Substance Act" because it does not meet these elements. ECF No. 278 at 9.

There is no merit to this argument. The statutory text of § 924(c)(2), which defines a "drug trafficking crime," clearly defines it as "any felony punishable under the Controlled Substances Act (21 U.S.C. § 801 *et seq.*)." 18 U.S.C. § 924(c)(2). Trappier's conviction is for conspiracy in violation of 21 U.S.C. § 846, which itself is a subsection of the Controlled Substances Act. Therefore, because a violation of § 846 is a "felony punishable under the Controlled Substances Act" it falls under § 924(c)(2)'s definition of a "drug trafficking crime." If sentenced today, Trappier's § 924(c) conviction would remain valid. He thus cannot meet the "extraordinary and compelling reason" standard based on this argument.

### iii.    *Trappier would no longer be a career offender if sentenced today.*

Trappier's third argument asserts that he can meet the "extraordinary and compelling reasons" standard because he would no longer be a career offender if sentenced today. Pursuant to United States Sentencing Guidelines § 4B1.1(a), a defendant is a career offender if each of the following elements is met:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction;
>
> (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and
>
> (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a). The Court will address the first and third elements before analyzing the second, which is the element in dispute here.

First, there is no dispute that the first element is met because Trappier was over the age of 18 when the instant offenses were committed. *See generally* PSR at 2 (noting that Trappier was 46 years old when he was sentenced). As to the third element, the PSR identifies two prior felony convictions of "controlled substance offenses." *Id.* ¶¶ 47 & 51. The first is Trappier's 1996 South Carolina conviction for PWID cocaine, and the second is his 2006 Georgia conviction for PWID marijuana. *Id.* Both convictions remain "controlled substance offenses" under recent Fourth Circuit caselaw and thus remain applicable predicates for career offender status if Trappier were to be sentenced today. *See generally United States v. Davis*, 72 F.4th 605, 610 (4th Cir. 2023) (holding, in relevant part, that distribution offenses under South Carolina law are not categorically disqualified from being treated as "controlled substance offenses" under the career offender provision of the United States Sentencing Guidelines); *see also United States v. Bates*, 960 F.3d 1278, 1293 (11th Cir. 2020) (holding that a defendant's two prior Georgia convictions with intent to distribute marijuana were valid "controlled substance offense" predicates for career offender status).

Turning to the second requirement, which asks whether the instant offense of conviction is either a "controlled substance offense" or a "crime of violence," the Court concludes that this requirement would no longer be met if Trappier were sentenced today. The instant offenses of conviction are (1) conspiracy to possess

with intent to distribute and distribute 100 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and (2) possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). Here, there is no dispute that, after the Fourth Circuit's opinion in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), Trappier's conviction for § 846 conspiracy would no longer qualify as a controlled substance offense. Here, the conspiracy conviction would not be a conviction that would count as a qualifying conviction under § 4B1.1 of the career offender guidelines.

The Government acknowledges that Trappier's conspiracy conviction is no longer a "controlled substance offense." ECF No. 296 at 7. However, it asserts that "Trappier would still be a career offender based on his plea to the § 924(c) count which . . . . which remains a valid conviction." *Id.* Thus, the question becomes, then, can Trappier's § 924(c) conviction serve as the qualifying instant offense that is a "controlled substance offense"? The Court concludes the answer to this question is no. This conclusion is reached pursuant to the commentary to the Sentencing Guidelines. Specifically, the Court looks to the commentary to § 4B1.2, which states: "A violation of 18 U.S.C. § 924(c) or § 929(a) is a 'crime of violence' or a 'controlled substance offense' if the offense of conviction established that the underlying offense was a 'crime of violence' or a 'controlled substance offense.'" USSG § 4B1.2, cmt. n.1. Accordingly, per the commentary, since Trappier's underlying offense for conspiracy no longer qualify as a "controlled substance offense after *Norman*, his § 924(c) conviction cannot independently qualify as a "controlled substance offense."

Thus, if sentenced today, Trappier could no longer meet the second required element for career offender status.

Trappier was originally sentenced as a career offender because his instant offense of conspiracy was then a "controlled substance offense." However, as discussed, the Fourth Circuit held in *Norman* that a conspiracy conviction is no longer categorically a "controlled substance offense." 935 F.3d at 239. Moreover, as provided by the commentary, a § 924(c) conviction, standing alone, cannot provide the requisite instant "controlled substance offense." Hence, if Trappier were sentenced today, he would not have been designated a career offender because neither of the two instant offenses are "controlled substance offenses."

The Court will next evaluate how this change in status affects Trappier's sentence. Notably, the Fourth Circuit has not held that *Norman* applies retroactively. *United States v. Bullock*, No. 4:11-CR-00416-TLW, 2023 WL 3344416, at *5 (D.S.C. May 10, 2023) (collecting cases). The question thus becomes whether, under § 3582 and relevant Fourth Circuit caselaw, district courts may consider *Norman* when evaluating a defendant's § 3582 motion. "The answer to this question is that, in applying the Fourth Circuit's decision in *United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020), district courts may consider and apply *Norman* retroactively when considering a motion pursuant to § 3582." *United States v. Williams*, No. 14-CR-428, 2021 WL 5827327, at *4 (E.D. Va. Dec. 8, 2021). By way of background, the Fourth Circuit addressed in *McCoy* whether a district court could consider a nonretroactive change to the "stacking" of § 924(c) sentences in the

First Step Act when deciding a motion under § 3582. *Id.* at 285. The Fourth Circuit held that a district court had discretion to do so. *Id.* In so holding, the Fourth Circuit explained that district courts may "permissibly treat[ ] as 'extraordinary and compelling reasons' for compassionate release" the severity of a defendant's sentence and the extent of the disparity between the defendant's sentence and those provided for under the First Step Act. *Id.* at 286. Thus, under *McCoy*, the Court is authorized to evaluate the disparity between the sentence Trappier would have received pre- and post-*Norman*.

This conclusion is further supported by the United States Supreme Court's determination in *Concepcion v. United States* that "the First Step Act allows district courts *to consider* intervening changes of law or fact in exercising their discretion to reduce a sentence."142 S. Ct. 2389, 2404 (2022) (emphasis added). "Although the Fourth Circuit has not yet specifically held that a *Norman* sentencing disparity is an extraordinary and compelling reason for compassionate release, numerous district courts within the Circuit (including in this district) have so held—often in cases with far smaller sentencing discrepancies than is present here." *United States v. Childs*, No. 7:16-CR-00026, 2023 WL 4711368, at *6 (W.D. Va. July 24, 2023);[6] *see also United States v. Brown*, ____F.4th____, 2023 WL 5257673 at *7

---

[6] *See also United States v. Glover*, No. 8:07-CR-00960-JMC-15, 2022 WL 3025753, at *5 (D.S.C. Aug. 1, 2022) ("In this case, Defendant has presented extraordinary and compelling circumstances for compassionate release . . . because Defendant's conviction is no longer a controlled substance offense pursuant to USSG § 4B1.2(b)."); *United States v. Williams*, No. 14-cr-428, 2021 WL 5827327, at *6–7 (E.D. Va. Dec. 8, 2021) (finding that "the retroactive application of *Norman* fits within the category of extraordinary and compelling circumstances that the Fourth Circuit held that § 3582 was meant to capture"); *United States v. Fennell*, 570 F. Supp. 3d 357, 363 (W.D. Va. 2021) (finding that "the significant disparity between Fennell's current sentence and the [ten years reduced] sentence he would face today for the same offense provides an extraordinary and compelling basis for a sentence

(4th Cir. Aug. 16, 2023) (noting that "§ 3582(c)(1)(A) allow for 'individual relief based on a § 924(c) sentencing disparity 'in the most grievous cases.'"). Accordingly, in order to evaluate whether there is a sentencing disparity here, the Court will recalculate Trappier's sentencing guidelines and conduct an analysis of Trappier's pre- and post-*Norman* guideline ranges.

At sentencing, Trappier was assigned a criminal history category of VI, pursuant to U.S.S.G. § 4B1.1 based on his status as a career offender. PSR ¶ 57. His career offender designation adjusted his total offense level to 37. *Id.* ¶ 74. Trappier received a three-level reduction for acceptance of responsibility, bringing his total offense level to 34. *Id.* ¶¶ 75–77. With a total offense level of 34 and a criminal history category of VI, Trappier's initial guideline range was 262 to 327 months. *Id.* ¶ 78. However, this range was subject to further enhancement due to his accompanying § 924(c) conviction. Specifically, pursuant to U.S.S.G. § 4B1.1(c)(2)(A), Trappier's final guideline range would be the result of adding the mandatory minimum consecutive penalty for his § 924(c) conviction (60 months) to the minimum and maximum of his initial guideline range. *Id.* This resulted in a final guideline range of 322 to 387 months. *Id.* As noted, Trappier was sentenced to 322 months.

---

reduction under § 3582(c)(1)(A)"); *United States v. Owens*, No. 7:10-cr-60, 2022 WL 17821560, at *6 (W.D. Va. Dec. 20, 2022) (52-to-68 month difference warranted compassionate release); *United States v. Naylor*, No. 7:14-cr-00026, 2023 WL 4162280, at *5–6 (W.D. Va. June 23, 2023) (46-month disparity); *United States v. Shaw*, No. 5:13-cr-00025, 2021 WL 3007266, at *5 (W.D. Va. July 15, 2021) (22-month disparity); *but see United States v. Anderson*, No. CR 3:14-604-JFA, 2022 WL 395235, at *8 (D.S.C. Feb. 9, 2022) ("The 21-month difference caused by the removal of the career offender designation is a far cry from the 'gross disparity' of 200 months and 30 years considered in *McCoy*.").

As discussed, Trappier would no longer be a career offender if sentenced today following the Fourth Circuit's holding in *Norman*. Instead of a criminal history category of VI, Trappier would receive a criminal history category of V. *Id.* ¶ 56. Based on the attributable drug quantity, Trappier would receive a base offense level of 32. *Id.* ¶ 68. Applying the same three-level reduction for acceptance of responsibility would result in a total offense level of 29. *See id.* ¶¶ 75–77. With a total offense level of 29 and a criminal history category of V, Trappier's guideline range on his conspiracy conviction would be 140 to 175 months. *See* U.S.S.G. § 5A. Additionally, based on his plea to the § 924(c) count, Trappier would receive a consecutive sentence of 60 months at minimum. Adding § 924(c)'s 60-month mandatory minimum to the guideline range on Trappier's conspiracy conviction would result in a total guideline range of 200 to 235 months. However, as discussed in more detail below in the Court's analysis of the 18 U.S.C. § 3553(a) sentencing factors, the 60-month consecutive sentence under § 924(c) is only the mandatory statutory *minimum*. The maximum consecutive sentence on this conviction is Life. Thus, if sentence today, the full potential sentencing range Trappier would face would be from 200 months *minimum* to a *maximum* of Life.

Based on the *potential* difference between the sentence Trappier received and the one he *could* receive today, the Court concludes that Trappier can meet § 3582's "extraordinary and compelling reason" standard. It will now weight the § 3553(a) sentencing factors.

B.    *The § 3553(a) Sentencing Factors.*

Even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that the § 3553(a) factors weigh against granting a reduction in Trappier's sentence.

i.    <u>*The nature and circumstances of the offense.*</u>

As part of the § 3553(a) factors, the Court reiterates the facts surrounding the offense conduct, which are thoroughly detailed above. It will again briefly note the important relevant facts here. First, on October 8, 2008, Trappier was arrested by DEU agents and found to be in possession of 5 grams of heroin and 252 grams of cocaine. PSR ¶ 14. In a post arrest interview, Trappier stated that he had distributed 195 bricks or 975 grams of heroin in the preceding eight months. *Id.* ¶ 19. Based on information relayed by Trappier, DEU agents searched his house and recovered 24 grams of heroin and a significant amount of cash. *Id.* ¶¶ 20–23. Because of this conduct, Trappier was charged with trafficking in heroin and

trafficking in cocaine. *Id.* ¶ 17. He was released on bond on October 11, 2008. *Id.* ¶ 23.

Notably, Trappier's criminal activity did not end after his release on bond. Five days after his release, DEU agents received information that Trappier was again active as a drug dealer as he was packaging heroin at one of several apartments he rented. *Id.* ¶ 24. Agents were further informed that Trappier was in possession of several firearms. *Id.* Agents arrested Trappier as he was leaving the apartment in a van. *Id.* ¶ 25. In searching the van, agents discovered 259 grams of heroin. *Id.* A subsequent search of Trappier's apartment revealed six firearms—which Trappier was prohibited from owning as a convicted felon—13 additional grams of heroin, and materials necessary for drug trafficking, including plastic bags, boxes of rubber bands, digital scales, mixers, and a large plastic bag containing the "cut" Trappier used for his cocaine. *Id.* ¶¶ 27–29. Ultimately, Trappier was held accountable for a *significant* volume of drugs: 2,252 grams of cocaine, 170.1 grams of crack cocaine, 1,052 grams of heroin, and 657 grams of marijuana—for a total converted drug weight of 5,504.97 kilograms. *Id.* ¶ 37. Trappier was a major drug dealer. Given the significant volume of drugs, the number of firearms Trappier possessed, and the fact that his release on bond did not deter him from resuming his drug trafficking activities, the Court concludes that "the nature and circumstances of the offense," 18 U.S.C. § 3553(a)(1), weigh against a reduction in his sentence.

ii.    _The history and characteristics of the defendant._

The Court next looks to "the history and characteristics of the defendant," which reveals Trappier's significant criminal history. The Court will discuss the relevant portions here. In 1989, Trappier was convicted of driving under suspension, 4th offense, and simple possession of marijuana. *Id.* ¶ 44. In 1996, he was convicted of possession of crack cocaine, failure to stop at a blue light, unlawful neglect of a child, resisting arrest, and driving under the influence. *Id.* ¶ 46. All of these convictions arose out of a single criminal incident. *Id.* The Court finds it necessary to discuss the facts surrounding this incident in more detail.

These five charges arose out of a single criminal incident in 1993. *Id.* According to the PSR, Trappier was driving with a suspended license in Georgetown County, South Carolina, when officers attempted to pull him over. *Id.* Notably, Trappier was accompanied by a ten-year-old child. *Id.* Officers used their blue lights and sirens to signal Trappier to pull over. *Id.* However, because he was in possession of crack cocaine, Trappier refused to stop and initiated a chase— exposing the child to a substantial risk of serious harm. *Id.* Eventually, Trappier pulled over and fled the vehicle. *Id.* In doing so, he abandoned the vehicle, leaving the ten-year-old boy behind. *Id.*

Less than a year after this criminal conduct, Trappier was again arrested— after committing *escalating* criminal conduct. Trappier was charged with (1) PWID cocaine, (2) PWID cocaine near a school, pointing a firearm, (3) carrying a pistol, (4) resisting arrest with a deadly weapon, and (5) possession of illegal firearm. *Id.* ¶ 47.

He was convicted on each of these serious charges, which again arose out of a single criminal incident, in 1996. *Id.* Trappier was sentenced to 5 years imprisonment. *Id.* Here too, the Court finds it necessary to discuss the facts surrounding this incident.

On June 2, 1994, Trappier was found in possession of cocaine within one-half mile radius of McDonald Elementary School in Georgetown, South Carolina. *Id.* Deputies of the Georgetown County Sherriff's Office attempted to arrest Trappier; however, like the 1993 incident, he refused to stop when signaled by deputies. *Id.* During his subsequent arrest, Trappier drew a 9mm Ruger pistol, which he had concealed in his pants and under his shirt, and *pointed it* at a deputy. *Id.* After he was arrested, deputies discovered that the Ruger was an illegal firearm since its serial number had been obliterated. *Id.*

Nearly five months later, Trappier was arrested in New York for criminal possession of a controlled substance, 3rd degree. *Id.* ¶ 48. He was convicted and sentenced to 1 to 3 years imprisonment in 1995. *Id.* After serving this sentence, he returned to South Carolina and was convicted of hindering and obstructing an officer in Georgetown County, South Carolina in 2002. *Id.* ¶ 49.  In 2008, he was convicted of possession with intent to distribute marijuana in Greene County, Georgia. *Id.* ¶ 51. Additionally, Trappier was convicted of four separate counts of driving under suspension. *Id.* ¶¶ 43, 45, 52 & 53.

The instant federal offense was committed while Trappier was serving a probation sentence for possession with intent to distribute marijuana. *Id.* ¶ 55. This, along with his significant criminal history, placed him in a criminal history category

of V, even before the career offender enhancement was applied. ¶ 56. In light of this significant criminal conduct, the Court concludes that "the history and characteristics of the defendant" weigh substantially against a reduction in Trappier's sentence.

### iii.     *The need for the sentence imposed.*

Turning to the next set of factors, the Court also concludes that §§ 3553(a)(2)(A)-(C) (the need for the sentence imposed) weigh against a reduction in Trappier's sentence for similar reasons. The circumstances of the instant conspiracy offense, which involved the trafficking of a *significant* volume of narcotics, demonstrate Trappier's continued disregard for the law. This conclusion is buttressed by the fact that a significant portion of the offense conduct occurred *days* after Trappier was released on bond following his initial arrest on drug trafficking charges. Finally, the Court notes that Trappier has prior convictions for resisting arrest, resisting arrest with a deadly weapon, and hindering an obstructing an officer and that one of these convictions involved Trappier drawing and pointing a firearm at a sheriff's deputy.  Thus, the Court concludes that the sentence imposed was—and is—necessary to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment, and to afford adequate deterrence. Moreover, the Court concludes that, if released, Trappier would pose a risk to the safety of others based on his substantial drug trafficking activity, his continued possession of illegal firearms, and the fact that his repeated encounters with the

criminal justice system have not deterred him from committing further criminal conduct.

    *iv.*   <u>*The kinds of sentences available.*</u>

The Court next turns to §§ 3553(a)(3)-(6)—the kinds of sentences available, the Guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. As noted above, Trappier contends that he is entitled to a sentence reduction because he would no longer be a career offender if sentenced today. After reviewing the record, the parties' arguments, and the relevant caselaw, the Court concludes otherwise.

First, the Court gives great weight to the parties' plea negotiations and resulting plea agreement. *See United States v. Bond*, 56 F.4th 381, 384 (4th Cir.), *cert. denied*, 143 S. Ct. 2596 (2023) (affirming the district court's conclusion that the defendant's sentence remained a fair punishment for his conduct after it balanced of the benefit of the defendant's plea agreement against the sentence for all charged counts). Here, Trappier was the sole defendant named in a six-count Indictment, and the Government sought a significant sentence against him. To accomplish this the Government entered a plea agreement with Trappier. In exchange for his plea, the Government agreed to drop four of six counts pursuant to a written plea agreement. ECF No. 85. Each of these dropped four counts, had Trappier been convicted of any one of them, would have resulted in him being a career offender. PWID a controlled drug constitutes a controlled substance offense under federal law. *See United States v. Groves*, 65 F.4th 166, 168 (4th Cir. 2023) (holding that a §

841(a)(1) distribution offense is a controlled substance offense under § 4B1.2(b) and thus a valid career offender predicate). The Government, when Trappier was originally sentenced, sought a career offender sentence, relying on the state of the law at the time, which held that conspiracy was a conviction that would make Trappier a career offender. At that time, dismissing the PWID counts in exchange for his plea, had no impact on Trappier's career offender status. Had the Government known that years later conspiracy would no longer be a controlled substance offense, the Government could have required Trappier to plead to one of the PWID counts in light of its determination that career offender status was appropriate for Trappier. It cannot now, 13 years after entering the plea agreement, be seriously disputed that, when dropping these four counts, the Government was fully aware of the *then-existing* sentencing regime, whereby Trappier would be sentenced as a career offender.[7] This is illustrated by the fact that three of the four charges the Government agreed to drop are still valid career offender predicates today: Count 2 (possession with intent to distribute cocaine), Count 3 (possession with intent to distribute heroin), and Count 5 (possession with intent to distribute heroin). See ECF Nos. 1 & 85; *see also Groves*, 65 F.4th at 168.

Under this regime, the Government pled Trappier to Counts 1 and 5 so that he would serve a substantial sentence for his crimes. *See United States v. Ford*, No.

---

[7] This is illustrated by the fact that three of the four charges the Government agreed to drop are still valid career offender predicates today: Count 2 (possession with intent to distribute cocaine), Count 3 (possession with intent to distribute heroin), and Count 5 (possession with intent to distribute heroin). *See* ECF Nos. 1 & 85; *see also United States v. Groves*, 65 F.4th 166, 168 (4th Cir. 2023) (holding that a § 841(a)(1) distribution offense is a controlled substance offense under § 4B1.2(b) and thus a valid career offender predicate).

CR 0:14-362-JFA, 2021 WL 4555730, at *10 (D.S.C. Oct. 5, 2021) (noting that the plea-bargaining process "may well be the reason that Congress expressly stated that the anti-stacking provision of the First Step Act was not retroactive. A retroactive application upsets settled bargains from years ago that were made in good faith."). Here, the sentence imposed was the result of the parties' plea agreement. The Court cannot now speculate as to how Trappier would plead  if sentenced today and therefore declines to reduce his sentence. *See Bond*, 56. F. 4th at 384 (affirming the district court's denial of a defendant's § 3582 motion because a sentence reduction would "disturb the parties' carefully negotiated agreement.").

Second, as discussed above, Trappier would face a lower starting point for his guideline range, if sentenced today. Yet even though he would no longer be a career offender, he would still receive a consecutive sentence to the sentence received for his conspiracy conviction because of his accompanying § 924(c) conviction. On his § 924(c) conviction, he would face a mandatory *minimum* of 60 months consecutive. But this is only the mandatory statutory *minimum*. Trappier could be sentenced up to a statutory *maximum* of Life on this conviction. Thus, if sentenced today, Trappier could still receive the original 322-month sentence imposed despite facing a lower initial guideline range. Accordingly, the Court finds that this factor also weighs against a reduction in Trappier's sentence.

### v.    *Trappier's asserted rehabilitation does not outweigh the*

Trappier also asserts that his behavior while in BOP custody also weighs in favor of a reduction in his sentence. ECF No. 254 at 10, ECF No. 278 at 12. The

Court has also carefully reviewed the records submitted by Trappier in support of his argument this argument that he has successfully rehabilitated. ECF No. 278–5; ECF No. 278–6 & 278–7. These records reflect that Trappier has completed programing and educational courses offered by the BOP. *Id.* These records reflect his efforts at rehabilitation. However, Trappier's inmate discipline date reveals that he has had disciplinary issues while incarcerated. ECF No. 256 at 10. Specifically, Trappier has received infractions for: (1) possessing an unauthorized item, (2) phone abuse-disrupt monitoring, and (3) being in an unauthorized area. ECF No. 266 at 10. The Court concludes that Trappier's rehabilitative efforts do not outweigh the other § 3553(a) factors. In sum, Trappier has committed serious crimes, including both the instant offenses and his past offenses. He has continued to have disciplinary issues while incarcerated. His rehabilitative efforts do not outweigh his repetitive contempt for the law that he exhibited before his incarceration.

> vi.     *The § 3553(a) sentencing factors weigh against relief.*

The Court concludes that, while Trappier would no longer be a career offender if he were sentenced today, the facts of this case do not warrant a reduction in his sentence. As noted, the Fourth Circuit has not provided that *Norman* entitles a defendant to retroactive relief. Instead, as outlined in *McCoy*, district courts should "conduct individualized inquires" and consider factors specific to the defendant. *McCoy*, 981 F.3d at 288. The Court has followed that guidance here and has based its decision on the individualized considerations outlined in detail herein. Trappier was held responsible for a significant volume of illegal narcotics. He was

involved in drug activity for many years. He was armed with a firearm throughout his criminal activity. His prior encounters with the criminal justice system and sentences served did not deter him from committing further criminal activity. The Court also notes the fact that Trappier resumed his drug activity within five days of being released on bond following his initial arrest on drug trafficking offenses. Thus, the Court's § 3553(a) analysis leads it to conclude that it is appropriate for Trappier to serve the rest of the sentence imposed because it is sufficient, but not greater than necessary, to satisfy the applicable sentencing factors.

## CONCLUSION

The Court finds that Trappier's motion should be denied based on an analysis and balancing of the 3553(a) factors because, if released, he would pose a significant risk to the public since his prior encounters with the criminal justice system have not deterred him from committing further criminal activity. Accordingly, it is the judgment of the Court that Trappier's motions for compassionate release, ECF Nos. 254 & 278, are **DENIED**.[8]

**IT IS SO ORDERED.**

*s/ Terry L. Wooten*
Terry L. Wooten
Senior United States District Judge

November 2, 2023
Columbia, South Carolina

---

[8] To the extent that Trappier seeks an order directing the BOP to grant him an early release to home confinement pursuant to the CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (2020), the Court has no discretion to issue such an order. *See, e.g.*, *United States v. Hendrix*, No. 1:10-cr-00067-MR-WCM-2, 2020 WL 2319698, at *1 (W.D.N.C. May 11, 2020) ("The discretion to release a prisoner to home confinement lies solely with the Attorney General. The legislation recently passed by Congress to address the COVID-19 pandemic does not alter this." (citations omitted)).